```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA      )
                              )
         v.                   )   CR. NO. 07-10289-MLW
                              )
DARWIN JONES,                 )
     Defendant                )
```

MEMORANDUM AND ORDER

WOLF, D.J.                                              April 27, 2009

The court has considered the government's response to the January 21, 2009 Order directing United States Attorney Michael Sullivan and Assistant United States Attorney Suzanne Sullivan to file affidavits seeking to show cause why sanctions should not be imposed on the government and/or Ms. Sullivan for "the egregious failure of the government to disclose plainly exculpatory evidence in this case [which] extends a dismal history of intentional and inadvertent violations of the government's duties to disclose in cases assigned to this court." United States v. Jones, 2009 WL 151587, at *5 (D. Mass. Jan. 21, 2009). The government and Ms. Sullivan request a hearing if the court is considering further action. Such a hearing will be held.

The government repeatedly, and appropriately, admits the serious "mistakes" it made in this case. See Government's Response to Court's January 21, 2009 Order at 1 ("[T]he government acknowledges and regrets the mistakes that were made in this case."); Affidavit of Michael J. Sullivan, ¶3 ("There can be no dispute that mistakes were made. . . ."); Affidavit of Suzanne

Sullivan, ¶6 ("I acknowledge, regret and take full responsibility for my unintentional and inadvertent errors relating to disclosure in this case."). Nevertheless, the court remains concerned about how and why the repeated errors in this case occurred, and also about the risk of that such errors by Ms. Sullivan and other prosecutors will recur.

In issuing the January 21, 2009 Memorandum and Order the court "assum[ed] that [Ms. Sullivan's] failure to disclose exculpatory information was not intentional...." Jones, 2009 WL 151587, at *6. Ms. Sullivan's affidavit indicates that it is appropriate to proceed on this assumption. Therefore, the court is not contemplating the appointment of private counsel to investigate and possibly prosecute contempt proceedings against Ms. Sullivan. Cf. In re Special Proceedings, 373 F.3d 37, 41-44 (1st Cir. 2004); United States v. Stevens, Cr. No. 08-231 (EGS) (D.D.C. Apr. 7, 2009).

However, Ms. Sullivan's explanation of how her series of serious mistakes occurred is inconsistent with the contemporaneous notes of her interviews and her testimony at the suppression hearing.[1] In any event, it is evident that the many Department of

---

[1] As explained in the January 21, 2009 Memorandum and Order, on April 15, 2008, Sullivan filed a memorandum and supporting affidavit asserting that Boston Police Officer Rance Cooley recognized defendant Darwin Jones on Middleton Street and considered Jones pedaling away on his bicycle to be suspicious because in their many prior encounters Jones had never fled. Jones, supra at 2. Cooley repeatedly testified to this effect on

2

Justice materials and opportunities for training described in the affidavits of the United States Attorney and Ms. Sullivan were inadequate to prevent the grave threat to the defendant's constitutional right to due process that her conduct created in

---

October 28, 2008. Id. at 3.  As Ms. Sullivan acknowledged in her testimony on October 30, 2008, her contemporaneous notes show that Cooley told her on both April 7, 2008 and October 6, 2008, that Cooley did not determine that the bicyclist was Jones on Middleton Street, but rather first recognized him when Jones was tackled while running between Marden Avenue and Middleton Street. See Jones, supra at 8.

   In contrast to her testimony, in her February 10, 2009 affidavit Ms. Sullivan claims that on April 7, 2008, she erred in failing to "sufficiently delve into" whether Cooley recognized Jones when he was on the bicycle on Middleton Street.  Suzanne Sullivan Aff., ¶4. This explanation is contradicted by Sullivan's contemporaneous notes and by her testimony.  For example, Ms. Sullivan's notes of her April 7, 2008 interview with Cooley state that he first saw the defendant on a bike on Middleton Street but "[a]t that point, however, [witness] did know it was [defendant] at that time." Ex. 11 (Sullivan's Apr. 7, 2008 notes); Oct. 30, 2008 Tr. at 85, 115-16, 122. Her April 7, 2008 notes also state that Cooley reported that when the defendant was "on ground on stomach . . . that was when [Cooley] 1st knew it was [defendant]." Ex. 11 (Sullivan's Apr. 7, 2008 notes).

   According to Ms. Sullivan's notes and testimony, on October 6, 2008, Cooley told her again that he did not immediately" recognize the man on the bike. Ex. 11 (Sullivan's Oct. 6, 2008 notes on trial outline at 5); Oct. 30, 2008 Tr. at 99-100; see also Jones, supra at 8. Rather, he did not recognize it was the defendant until "he was on ground (stomach)." Ex. 11 (Sullivan's Oct. 6, 2008 notes on trial outline at 11)."

   Sullivan's notes and testimony render unconvincing the explanation for her errors provided in her affidavit.  Indeed, her affidavit raises further questions about whether she is careful and reliable in her representations to the court.

this case.[2]

As the government recognizes, the court has, among other things, the authority to require a prosecutor to pay the fees of defense counsel generated by her misconduct and to order her to attend an ethics seminar. See United States v. Horn, 29 F.3d 754, 766-67 (1st Cir. 1994); Government's Response to Court's January 21, 2009 Order at 2. Although other sanctions and remedial action would be permissible, these are the two options that the court is now considering most seriously.

More specifically, the court is considering ordering that Ms. Sullivan reimburse the District Court for at least some of the time spent by defendant's Criminal Justice Act Counsel in dealing with issues caused by her failures to disclose material exculpatory information.[3] In addition, because training involving only prosecutors does not seem to be sufficient, the court is considering ordering Ms. Sullivan to attend a program on the disclosure of exculpatory information involving judges and defense

---

[2] Ms. Sullivan reports that she became an Assistant United States Attorney in January, 2006, and in March, 2006, attended four days of training at the Department of Justice's National Advocacy Center. See Suzanne Sullivan Aff. ¶¶2, 3. The court notes that the voluminous United States Attorney's Manual ("USAM") did not then have a section on a federal prosecutor's duty to disclose material exculpatory information. USAM §9-500, "Policy Regarding Disclosure of Exculpatory and Impeachment Information," was added to the Manual in October, 2006.

[3] Criminal Justice Act counsel are now compensated at the rate of $110 per hour.

4

lawyers, as well as prosecutors, which the court would organize.

Accordingly, it is hereby ORDERED that:

1. Defendant's counsel John Palmer, Esq. shall, by May 4, 2009, consult his time records and submit an affidavit describing generally the work he did, and the time he spent on various dates during trial and since, in dealing with issues relating to the late disclosure of material exculpatory information in this case.

2. A hearing will be held on May 7, 2009, at 10:30 a.m. Ms. Sullivan shall attend. The Federal Public Defender and the Chair of the Criminal Justice Act Panel are also invited to attend or to be represented by a designee.

       /s/ MARK L. WOLF
      UNITED STATES DISTRICT JUDGE