UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA    )
                            )
         v.                 )
                            )     Criminal No. 07-10289-MLW
DARWIN JONES,               )
         Defendant.         )


**SUPPLEMENTAL MEMORANDUM REQUESTING NO SANCTION**

**Introduction**

In May of 2009 this Court wanted to "send the message that if [a discovery violation] happens again, it might literally cost prosecutors out of their own pocket." (p. 40 of May 12, 2009, hearing transcript ["hearing"].)  The Court told the Acting U.S. Attorney that "I really want to communicate to your colleagues that if I have this problem again, they are not just going to get their names in something I write, probably, and I have to consider all the circumstances, they are going to have to write a check to the Clerk of the United States District Court…" (pp. 43-44 hearing.)  The United States Attorney has clearly stated that the U.S. Attorney's Office ("USAO") has gotten this Court's message.  There is no reason to disbelieve her or her assertion that the USAO is implementing practices designed to minimize avoidable discovery lapses.  Thus, there is no reason to further emphasize the point to members of the USAO by sanctioning Suzanne Sullivan, with or without a monetary penalty.

Given the commitment and assurance this Court has received directly from the U.S. Attorney, combined with the Court's explicit warning of possible future sanctions (contempt proceedings, routinely naming prosecutors, monetary sanction) (pp. 6, 25, 30-31, 33-34, 36 of May 18, 2009, order ["order"]), the USAO is adequately on notice.  Since no other specific

deterrent or punitive reason would make a personal sanction necessary in this case, none should be imposed.

The Court has the discretion not to sanction Ms. Sullivan and the Court should exercise that discretion here, just as it has in the past when it chose not to name a prosecutor in an opinion noting that "one of the reasons I never did that was out of solicitude for the prosecutor who had made repeated mistakes." (p. 42 hearing.) Ms. Sullivan requests some solicitude in light of the full record, her history as a prosecutor, and her response to the Court's concerns. Despite what happened here, the full context of who Ms. Sullivan is and how she responded to this situation justifies the Court in not imposing the harshest sanction this Court has ever imposed upon any prosecutor for any conduct (which the Court would be doing with a sanction of Ms. Sullivan and a monetary penalty). The Court's objective of providing fair criminal proceedings is shared and endorsed by Ms. Sullivan, as demonstrated by her long track record of fairness and integrity. This Court said it wants to do what is "sufficient and no more than necessary to some serve its intended purpose." (p. 35 hearing.) What's been done is sufficient. A sanction is not necessary.

**<u>Ms. Sullivan Has Done All She Can Do</u>**

At this point, the most appropriate focus is on the individual efforts of Ms. Sullivan since January of 2009. From this individualized prospective, the Court may consider Ms. Sullivan's unprecedented efforts at training and education, her current and previous unblemished performance as a prosecutor, and her stellar reputation for fairness generally, and appropriate discovery practices in particular, and this Court can conclude that the just result would be to decline to sanction Ms. Sullivan.

The most relevant facts are, fortunately, quite clear:

1. Ms. Sullivan is a good person and a fair prosecutor whose lapse was not intended to, and did not, prejudice the defendant;

2. Ms. Sullivan has already suffered enormously from this Court's considered decision to name her in these proceedings. The Court quite correctly noted that it will "haunt an attorney" (pp. 24-25 order) to be "stained with my findings in the Federal Supplement." (p. 38 hearing);

3. Ms. Sullivan has undertaken unprecedented study and training to ensure that her work attains the highest standards;

4. The Department of Justice ("DOJ") and USAO, D.MA, not Ms. Sullivan, are responsible for the cases in Appendix A to this Courts January 21, 2009 Memorandum and they, not Ms. Sullivan, are responsible for the policy choices that led to adopting state gun cases and relying on specific Boston Police witnesses which this Court expressed concerns about;

5. The historical conduct of DOJ and USAO , D.MA in responding to this Court's concerns is wholly outside Ms. Sullivan's control. However, recent history reflects a positive institutional response to the Court; and

6. There is no fact in the record that should cause the Court to conclude that its actions toward Ms. Sullivan to date have been inadequate to achieve the Court's desire to send an important message to her colleagues. (p. 48 order.)

The Court chose to defer the decision as to whether sanctions were appropriate so that Ms. Sullivan, as well as DOJ, could begin the process of regaining the Court's trust. (p. 47

order.)  Ms. Sullivan has embraced this opportunity fully and it is hard to imagine what more she could have done. Her efforts are detailed in her affidavits.  They are unprecedented in scope and involved both a positive learning experience and also an inevitable component of pain as she repeatedly shared her embarrassing circumstances with others.  Ms. Sullivan's efforts provide the Court with every reason to believe that she gets it and that there will be no repetition of this problem.

Specifically, Ms. Sullivan has:

1. Read 8 publications relating to discovery, ethical obligations or prosecutorial accountability;

2. Attended or viewed 6 USAO trainings on issues related to discovery;

3. Viewed a two hour DOJ training on discovery issues;

4. Attended a training at the Middlesex County District Attorney's relating to ethics and discovery issues;

5. Read 11 opinions relating to discovery issues;

6. Met with or spoke with 8 outside attorneys, including 2 academic professionals who are attorneys, to discuss best practices in connection with federal discovery;[1]

7. Received specific mentoring within the DOJ;

8. Cooperated promptly and completely with OPR after self reporting this Court's order; and

---

1. Ms. Sullivan met or spoke with Attorneys Kevin Reddington, Kevin Cloherty, Jonathan Chiel, Marty Weinberg, Alex Whiting, Michael Kendall, Bob Keefe and Michael Cassidy.  All of these are experienced and distinguished attorneys who, out of respect for this Court, freely gave of their time to assist Ms. Sullivan in understanding the nature and consequences of her lapse and to assist her in the performance of her duties.

9.  Attended the discovery training program initiated by the Court and held on December 16, 2009.

Together, this track record reflects remorse and a positive commitment to superior performance and the highest ethical standards. It should be enough.

As this Court noted, being named personally is not an inevitable result of a prosecutorial lapse. Also, as the Court noted, imposing additional training is not an inevitable consequence of a lapse, but Ms. Sullivan has nonetheless undergone extensive training since the Court's January, 2009 order.

There is no reason that would justify the conclusion that a further order sanctioning Ms. Sullivan formally would be "just under the circumstances" or necessary because "existing provisions are inadequate." (pp. 33-34 order.) Without some factual basis for believing that the Court's message – both directly stated and by making an example of Suzanne Sullivan – has not gotten through, a formal sanction is simply not called for.

**The Message Has Been Sent And Received By The Broader Audience In The U.S. Attorney's Office And The Department of Justice**

The Court's announced intent to pursue contempt prosecutions in the future, publicly name prosecutors in its opinions, and the Court's decision to hold in abeyance the possibility of personal and institutional sanctions for the last 12 months has accomplished its goal and put both Ms. Sullivan and the U.S. Attorney on notice of the severe consequences that may accompany any future discovery violations.

Some other good has also come from the Court's follow-up to the issues in the Jones case. The MCLE discovery program was heavily attended and of very high quality. The lack of

agreement between defenders and prosecutors suggests that the ongoing review of the local rules may serve a very useful purpose which will be of great benefit to all and that too is a result of this Court's ongoing efforts. The increased training within the USAO and the nationwide increase in training and self examination by the Department of Justice are matters attributable, in part, to this case.

The commitments made by the Acting U.S. Attorney (which continue under the present U.S. Attorney) to examine the intake process, realign supervisory responsibilities in the office, examine cases of untruthfulness under oath for possible perjury prosecutions, and the enhanced dialogue between the USAO and the investigating agencies about discovery responsibilities are all positive recent developments.

In addition, this Court's intervention has caused improvement in the practices of the USAO including a heightened sensitivity to the issues surrounding interviewing witnesses by an Assistant U.S. Attorney without another witness present and the special risks of offering testimony from police officers previously found to have perjured themselves. This intensified scrutiny, which resulted from this Court's hearings and findings, makes it much less likely any judge in this district will be faced with the situation found in the Jones case. Imposing a sanction on Ms. Sullivan to further emphasize to the USAO that the Court is serious about its planned punishments is unnecessary and comes at a cost to Ms. Sullivan's reputation that is not warranted. The Court should accept that it has caused progress and decline to impose a sanction.

**Conclusion**

At this point, whether out of solicitude or an analytical assessment of Ms. Sullivan's career, character, response to the issue, and suffering as a result of it, the Court can properly

conclude that a sanction is not warranted either to motivate Ms. Sullivan or to improve the USAO. Ms. Sullivan requests the Court render that conclusion and close this matter.

                                                  Respectfully submitted,

                                                  SUZANNE SULLIVAN

                                                  By her attorney,

                                                  /s/ Joseph F. Savage, Jr.
                                                  Joseph F. Savage, Jr. (BBO # 443030)
                                                  GOODWIN PROCTER LLP
                                                  53 State Street
                                                  Boston, Massachusetts 02109
                                                  Tel.: 617.570.1000
                                                  Fax: 617.523.1231
Dated: December 30, 2009                    jsavage@goodwinprocter.com

## CERTIFICATE OF SERVICE

     I hereby certify that on December 30, 2009, this Supplemental Memorandum Requesting No Sanction filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

                                                  /s/ Joseph F. Savage, Jr.