UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| v. ) | |
| ) | Criminal No. 07-10289-MLW |
| **DARWIN JONES,** ) | |
| Defendant. ) | |

**GOVERNMENT'S DECEMBER 30, 2009 RESPONSE
TO THE COURT'S MAY 18, 2009 AND DECEMBER 8, 2009 ORDERS**

In this pleading, the government completes its response to the Court's directives in Part III of its May 18, 2009 *Memorandum and Order*, and responds to the Court's December 8, 2009 *Memorandum and Order*. [Docket entry ("D.") 90, page 48; D.106, pages 5-6]. The government incorporates its previous arguments (in particular its response filed on December 1, 2009) as to why the Court should not sanction it or the AUSA as well as the accompanying submission of United States Attorney Carmen M. Ortiz concerning her views regarding the December 16, 2009 discovery program and the affidavit of Criminal Chief James B. Farmer concerning the progress that the Department of Justice ("DOJ") has made to "improve the Department of Justice's process for investigating and disciplining prosecutorial misconduct." [*Id*.].

    A.    **There is no factual or legal basis for sanctioning the government**.

As previously argued, there is no factual or legal basis for the Court to sanction the government. Factually, there is no evidence that the United States Attorney's Office ("USAO") did or failed to do anything that would warrant a sanction.[1] As a legal matter, the Court may not impose

---

[1] As noted, the government previously provided the Court with information about the comprehensive training and supervision of its AUSAs. No sanction is appropriate given that factual record. In addition, while the December 16, 2009 discovery program cannot compare as a training

a monetary sanction against the government, either pursuant to its supervisory power or Rule 16 of the Federal Rules of Criminal Procedure. *United States v. Horn*, 29 F.3d 754, 766 (1st Cir. 1994) (a court's supervisory power does not authorize it to impose a monetary sanction on the United States); *United States v. Woodley*, 9 F.3d 774, 781 (9th Cir. 1993)(Rule 16 does not work a waiver of sovereign immunity). Nor, as previously discussed, does Fed. R.Crim. P. 16 or a court's supervisory authority permit the Court to order the government or all criminal AUSAs in the District of Massachusetts to training. [*See, e.g.*, D.105].[2]

### B.   The Court should not sanction the AUSA.

The Court has indicated the possibility that it might require the AUSA involved in *Jones* case to reimburse the District Court some amount of Criminal Justice Act funds. [D.74]. The law authorizes the use of a court's supervisory power to impose attorney's fees against an individual AUSA in those cases where the evidence establishes bad faith. *Chambers v. Nasco*, 501 U.S. 32, 45 (1991) (fee shifting permitted as a sanction for "willful disobedience of a court order" or when a party has acted "in bad faith, vexatiously, wantonly, or for oppressive reasons"); *Horn*, 29 F.3d at 760 ("a court may invoke its supervisory power to assess fees only when the fees are intended as a sanction responding to a display of bad faith"). The record here does not establish bad faith,

---

program (as opposed to a forum during which the participants share their different perspectives) to the extensive training provided by the USAO and DOJ, the USAO's commitment to discovery issues is nonetheless reflected in the number of AUSAs who voluntarily attended the program. Hopefully, this fact will ameliorate the Court's concerns.

[2]The government understands that the Court has rejected these arguments. [D.106 , page 2]. There is nothing in the two cases cited by the Court, however, that would support the kind of order the Court has suggested it would impose against the USAO.

Aside from ordering the government to training, the Court has not identified any other sanction it might enter against the government.

however.

Nor should the Court impose some other monetary sanction. While the First Circuit has noted that bad faith is "an impelling factor" in assessing a monetary sanction, *In Re Cordova Gonzalez*, 726 F.2d 16, 20-21 (1st Cir. 1984), it does not appear to have addressed the precise conditions under which a court may award a monetary sanction that does not consist of attorney's fees. One court has noted a split in this area of the law, itself requiring a finding of bad faith only for certain errors committed by counsel. *United States v. Seltzer*, 227 F.3d 36, 41 (2nd Cir. 2000).[3] If bad faith is required, then, as already noted, the record does not establish it. In any event -- whether or not bad faith is required – the Court should not impose costs for all the reasons already discussed by the government and Attorney Savage (including the obvious care with which the AUSA attempted to handle the case, the extraordinary efforts she has made to educate herself about discovery issues, the recurrent, emotionally difficult publicity about this case,[4] the continuing OPR investigation into her conduct, and the time – over a year – in which this matter has been pending), and because the AUSA is not herself responsible for prior discovery mishaps (*i.e.*, in other cases)

---

[3]*Compare, for example, Sample v. Miles*, 239 Fed. Appx. 14, n.20 (5th Cir.), *cert. denied*, 552 U.S. 833 (2007) (monetary sanction imposed under court's inherent power requires a finding of bad faith); *Barnes v. Dalton*, 158 F.3d 1212 (11th Cir. 1998)(in case involving a sanction in the form of expert witness expenses, the court stated, "The key to unlocking a court's inherent power is a finding of bad faith."); *United States v. Wallace*, 964 F.2d 1214 (D.C. Cir. 1992)(bad faith required to impose juror fees and court costs as a sanction for attorney's failure to be ready for trial); *Zambrano v. City of Tustin*, 885 F.2d 1473, 1478 (9th Cir. 1989)(because inherent powers are shielded from direct democratic controls, they must be exercised with restraint and bad faith is required before sanctions may be imposed), *with Republic of Philippines v. Westinghouse Electric Corporation*, 43 F.3d 65, 74, n.11 (3rd Cir. 1994)("a court need not always find bad faith before sanctioning under its inherent powers"); *Harlan v. Lewis,* 982 F.2d 1255, 1260 (8th Cir. 1993)(bad faith is not required for every possible disciplinary exercise of the court's inherent power).

[4]*See Horn*, 29 F.3d at 758, n.1 (recognizing the "public humiliation" that attends the publication of a prosecutor's name in an adverse discovery order).

which underlie a great deal of the Court's concerns. *Cf. Sample v. Miles*, 239 Fed. Appx. at 20 (AUSA could not be held responsible for acts to which he had no connection or exercised no oversight).

Moreover, even assuming that Fed. R. Crim. P. 16 is implicated by the facts of this case,[5] Fed. R. Crim. P. 16 (d) does not support the imposition of a monetary sanction. [D.90, pages 32-33]. When a litigant has failed to comply with its other provisions, Fed. R. Crim. P. 16(d)(2) authorizes a court to order inspection, Fed. R. Crim. P. 16(d)(2)(A); grant a continuance, Fed. R. Crim. P. 16(d)(2)(B); exclude evidence, Fed. R. Crim. P. 16(d)(2)(C); or "enter any other order that is just under the circumstances," Fed. R. Crim. P. 16(d)(2)(D). While the language of Rule 16(d)(2)(D) may seem broad, the interpretive canon of "*ejusdem generis*" does not support an interpretation allowing for monetary sanctions against an individual AUSA. "[W]hen a general word or phrase follows a list of specific persons or things, the general word or phrase will be interpreted to include only persons or things of the same type as those listed." Black's Law Dictionary 535 (7th ed. 1999). Thus, under *ejusdem generis*, where several specific terms are followed by a more general term, the general term is deemed to share the characteristics of the specific terms that precede it. Here, the remedies listed in clauses (d)(2)(A)-(2)(C) are all case-related remedies (*e.g.,* a continuance or suppression); and Rule 16(d)(2)(D) therefore must be similarly interpreted. *See Norton v. Southern*

---

[5]While Local Rule 116.2(A)(2) and 116(B)(1)(b) (the government must disclose information that casts doubt on the admissibility of evidence that the government anticipates offering in its case-in-chief and that could be subject to a motion to suppress) are implicated by the facts of this case, it appears that Fed. R. Crim. P. 16 is not. Under Rule 16(a)(2), a defendant may not examine government work product in connection with his case, *United States v. Armstrong*, 517 U.S. 456, 463 (1996), and Rule 16(a)(2) expressly prohibits the discovery of witness statements. *United States v. Carrasquillo-Plaza*, 873 F.2d 10, 13, n.2 (1st Cir. 1989). If Fed. R. Crim. P. 16 does not apply to the facts here, Fed. R. Crim. P. 16(d) cannot be used to impose a sanction.

*Utah Wilderness Alliance*, 542 U.S. 55, 63 (2004) (*ejusdem generis* attributes to the last item in a sequence of items the same characteristic of discreteness that is shared by all the preceding items).

An interpretation of Fed. R. Crim. P. 16(d)(2)(D) authorizing monetary sanctions against an individual AUSA is not warranted for two additional reasons. First, and as noted in the government's December 1, 2009 pleading, Fed. R. Crim. P. 16 applies to "parties," not to parties and their attorneys, as does, for example, other provisions of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 11(c) (court may impose "an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation."); Fed. R. Civ. P. 16(f) (in lieu of or in addition to any other sanction, "the judge shall require the party or the attorney representing the party to pay the reasonable expenses incurred because of any noncompliance with this rule, including attorney's fees ..."); Fed. R. Civ. P. 37(g) (if a party or party's attorney fails to participate in good faith in development of discovery plan, court may "require such party or attorney to pay any other party the reasonable expenses, including attorney's fees, caused by the failure."). The drafters of Fed.R.Crim. P. 16 would have inserted comparable language in Rule 16 if it had been intended that the district court should have the power to impose monetary sanctions on the party's attorney. *Cf. Russello v. United* States, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." )(internal quotation marks omitted).

Finally, as previously noted, Fed. R. Crim. 16 does not work a waiver of sovereign immunity, *Woodley*, 9 F.3d at 781, *Horn*, 29 F.3d at 764, n.11, and thus monetary sanctions cannot be imposed against the government pursuant to it. *Compare* Fed. R. Civ. P. 11 and Fed. R. Civ. P. 37 (expressly

5

providing for monetary sanctions). It is unlikely that Congress intended to enact a rule that allows for monetary sanctions against defendants but not against the government, particularly given that it is the government that institutes criminal actions. *O'Connell v. Shalala*, 79 F.3d 170, 176 (1st Cir. 1996) ("courts are bound to afford statutes a practical, commonsense reading"). Accordingly, Rule 16(d) cannot sensibly be read to permit the imposition of monetary sanctions.

Fourth, the absence of prejudice to the defense also makes Fed. R. Crim. P. 16 an inappropriate vehicle for the imposition of sanctions. The specific remedies identified in Fed. R. Crim. P. 16 (an order directing the production of discovery, a continuance, exclusion of suppressed evidence) are each designed to ensure that the defense is not prejudiced, and lack of prejudice precludes the grant of a new trial or reversal on appeal. Fed. R. Crim. P. 52(a) and (b). Even if Fed. R. Crim. P. 16(d)(1)(D) permitted the entry of some order in the absence of prejudice (an issue that does not appear to have been addressed by the appellate courts), prejudice to the defense is certainly an important factor. *Cf. United States v. Josleyn*, 99 F.3d 1182, 1196 (1st Cir. 1996)("The district court has broad discretion to redress discovery violations in light of their seriousness and any prejudice occasioned the defendant"; relief must be proportionate both to the prosecution's nonfeasance and any prejudice to the defense). Where the AUSA here has already been admonished severely and is the subject of an OPR investigation, Fed. R. Crim. P. 16 is an inappropriate vehicle to impose a sanction given the absence of prejudice.

In the end, although the mistakes here are regrettable and to be avoided, they do not warrant a sanction. Nor can the Court's concern about errors it has seen in the past, its interest in "general deterrence" [*see, e.g.*, D.90, page 42], and its desire to stop all errors change this result. Accountability is not fostered when an individual is punished in any way because of errors

committed by others. And "although the threat of severe sanctions...will tend to make attorneys more diligent, even diligence will not prevent all human error." *Velazquez-Rivera v. Sea-Land Service, Inc.*, 920 F.2d 1072, 1078 (1st Cir. 1990).

> **C.    The Court should decide the issues before it and not impose a further waiting period.**

It has been over a year since the Court first identified the discovery issue that is the subject of the present litigation, and seven months since the Court entered its May 18, 2009 *Memorandum and Order*. In deciding to defer its decision, the Court took advantage of the AUSA's suggestion, in her February 10, 2009 affidavit, that the Court "defer any decision on any sanction for a period of six months to allow her to demonstrate [her] commitment to not repeat these errors" if it felt it needed greater assurance of that commitment. [D. 65, page 17]. The government had not itself invited the Court to defer its decision-making, and it strongly believes that any further deferral (for example, to enable the United States Attorney to report on the number of AUSAs who have watched the video recording of the December 16, 2009 discovery program) would not only prolong this difficult experience for the AUSA, but would create the appearance that the Court is attempting to ensure that all criminal AUSAs in fact watch the program, something which the Court could not do by order (as explained in the government's December 1, 2009 filing), or otherwise direct the internal affairs of the USAO. *In the Matter of United States of America*, 503 F.3d 638, 641 (7th Cir. 2007)(a court may not "postpone decision as a means to supervise the internal operations of another branch of the national government"). The record before the Court is pellucid: the government is serious about meeting its discovery obligations, conducts substantial and meaningful discovery training programs, and adequately supervises its AUSAs. For her part, the AUSA has apologized for her

7

mistakes and has made unprecedented efforts to prove her commitment to her obligations to the Court. No further information is needed upon which to base a decision, and the resolution of this matter should not be further delayed.

**D.      Responses to the Court's questions.**

The following information is provided in addition to the information contained in the submission of the United States Attorney and the affidavit of the Criminal Chief:

1.      In its December 1, 2009 *Memorandum and Order*, the Court directed that the government state in its December 30, 2009 submission "whether a representative of the Department of Justice was invited to attend the Program and did so." Representatives of the DOJ were invited to attend, and Thomas Anderson, Assistant General Counsel from the Executive Office for United States Attorneys, in fact attended.

2.      The Court directed that the government provide it with certain information, as set forth below:

a.      ***The total number of AUSAs who handle criminal matters in the District of Massachusetts***: There are 91 AUSAs assigned to the Criminal Division, and 25 AUSAs assigned to the Civil Division, 13 of whom handle or have handled criminal cases from time to time. These numbers do not include the United States Attorney; Michael K. Loucks, whose last day as an AUSA was December 19, 2009; Paul Casey (a Criminal Division AUSA) who has been out of the office on a detail since July 1, 2009 and whose position here terminates on January 2, 2010; or Patricia Connolly (a Civil Division AUSA) who has been on a detail in Washington, D.C. since approximately June of 2007.

b.      ***The total number of Assistants who attended the program***: Sixty-nine Criminal

Division AUSAs and 12 Civil Division AUSAs reported that they attended the program. The United States Attorney attended the program as well (as did Michael K. Loucks). There are a number of reasons why AUSAs did not go to this program, including that some were preparing for trial, work a fair distance away (eight AUSAs handling criminal matters work in Worcester and Springfield), were away from the office on business, or were on medical or other leave.

    c.    ***The total number of AUSAs who viewed the program on videotape***: We have not yet received the videotape from MCLE. The videotape will be made available to AUSAs as soon as possible after it is received.

## Conclusion

For all the reasons set out above and previously, the government respectfully states that sanctions are not warranted against the USAO or the AUSA.

Respectfully submitted,

CARMEN M. ORTIZ
United States Attorney

By: *s/s Dina Michael Chaitowitz*
DINA MICHAEL CHAITOWITZ
Chief of Appeals

## Certificate of Service

I hereby certify that on December 30, 2009, I caused this pleading to be filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*s/s Dina Michael Chaitowitz*
DINA MICHAEL CHAITOWITZ
Chief of Appeals