# EXHIBIT 1

**United States Attorney's December 30, 2009
Response to the Court's May 18, 2009 and December 8, 2009 Orders**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>)<br>v.   )<br>)<br>)<br>DARWIN JONES,   )<br>Defendant   ) | Criminal No. 07-10289-MLW |

UNITED STATES ATTORNEY'S DECEMBER 30, 2009
RESPONSE TO THE COURT'S MAY 18, 2009 AND DECEMBER 8, 2009 ORDERS

In its December 8, 2009 *Memorandum and Order*, the Court asked that I report my assessment of the value of the Massachusetts Continuing Legal Education ("MCLE") December 16, 2009 discovery program and "state whether my office is interested in participating voluntarily in the future in similar programs on issues of common interest concerning the administration of justice." The Court also asked that I state my "view concerning whether the Program, among other things, has diminished the need for sanctions to be imposed" on the Assistant U.S. Attorney ("AUSA") involved in the *Jones* case or on the government. My responses to these questions are set forth below. The Court also requested certain data, the answers to which are contained in the December 30, 2009 affidavit of Criminal Chief James B. Farmer and the *Government's December 30, 2009 Response to the Court's May 18, 2009 and December 1, 2009 Orders*.

### The Discovery Program

I thought the discovery program was a useful forum for a general discussion of discovery issues. There is considerable value in having opportunities for prosecutors, defense counsel, and judges to discuss issues of common concern on a non-case-specific basis. Indeed, United States Attorneys and Assistant United States Attorneys ("AUSAs") have participated for years in such

programs sponsored by the Boston Bar Association, MCLE, the New England Region of the White Collar Crime Committee of the American Bar Association, the Federal Bar Association, and other bar groups, and by this Court. Such programs have the potential to enhance understanding of the perspectives of all participants.

I greatly appreciate the efforts of Judge Woodlock, Magistrate Judge Sorokin, and Dean Cassidy to set an appropriate, constructive tone for the discovery program. In running the program, all three provided the defense attorneys and the prosecutors on the panel ample opportunity to air their differing perspectives on discovery. The hypotheticals, as moderated by Dean Cassidy, provided a valuable format for the panel members to identify areas of differences and, in a few instances, areas of common ground on the scope of discovery obligations.

I was also grateful to have the opportunity during the program to emphasize my office's commitment and the commitment of the Department of Justice ("DOJ") to seek justice; to share my expectation that discovery matters should be handled with civility and professionalism; to have my office explain that, in some cases, there are significant countervailing interests (for example, the safety of victims and witnesses) that the government must consider in drafting its discovery responses, particularly when determining whether to reveal information that is not required by law to be disclosed; to demonstrate, through the answers provided by the AUSAs on the panel, the thoughtful, careful, principled, and reasonable approach AUSAs take in analyzing discovery issues; to remind defense counsel that, without any knowledge or understanding of the defendant's theory of a case, an AUSA may not appreciate the value to the defendant of a particular piece of information; and to urge defense counsel to engage in a meaningful dialogue with the AUSA about their case and any information which they feel is material and in the

government's possession, custody, or control but not previously disclosed. Of course, the opportunity for social interaction between prosecutors and defense counsel at the post-seminar reception was useful as a bridge-builder. I look forward to future programs on issues of common interest concerning the administration of justice.

  I do have a few caveats about the program, however. While the program was a valuable forum for the sharing of different perspectives, its value as a pure training program is less clear. By its very nature, the program could not include the detailed, specific discussion of case law, rules, and other considerations that are the essential components of an intensive discovery training program, such as those conducted by the United States Attorney's Office ("USAO") and the DOJ. While periodic non-adversarial public gatherings may help foster healthy relationships among the participants in the criminal justice system and provide useful insights to those participants' different views, and while I am happy to participate in such programs in the future, with respect to the nitty-gritty of discovery issues, I think it may be more effective for defense counsel and the judiciary to directly address the USAO in the context of USAO training programs. Indeed, I have invited one defense attorney to speak at a Criminal Division meeting in the future. I understand that the Court has concerns about providing training to only one side of the "versus"; however, I do know that the United States Attorney's Office for the District of Columbia recently had such an in-house panel discussion, at which a federal district court judge and the federal defender (among others) provided the USAO with the perspectives of the bench and the defense bar. Additionally, I am aware that judges have participated in programs at DOJ's National Advocacy Center.

      The effectiveness of the program was also diminished somewhat by its provenance. A true dialogue among the participants of the criminal justice system should be unrelated to any case, require that all the panelists analyze the issues in the context of existing law (rather than simply state what they desire), and should deal with the practices of *all* concerned (this program, for example, did not address defense counsel's practices concerning reciprocal discovery).

      Were the Court to organize similar programs in the future, I believe it would be useful for defense counsel to identify specific examples of discovery which they feel they do not timely receive; for the moderator to press any panelist who espouses a view that is contradicted by the law (as, for example, when one panelist suggested that the government should produce "everything," apparently irrespective of whether the information is discoverable under the law); and for the judges to express their opinion on the appropriate resolution of the discovery issues (in the December 16 program, the judges did not share how they would resolve the issues presented).

### **Sanctions**

      As to the Court's inquiry as to whether the program "has diminished the need for sanctions to be imposed," I believe the commitment of the USAO to its discovery obligations is demonstrated by the number of AUSAs (which included the AUSA involved in this litigation) who voluntarily attended the program. I believe that sanctions (either against the USAO or the AUSA) are not warranted for all the reasons set out in earlier pleadings filed by the government on this issue and in the other submissions filed today.

      Finally, I think it important to remind the Court that more than a year has passed since the discovery issue in this case first arose. During this time period, an individual who chose to

dedicate her career to the public sector has been living under a cloud that no doubt has affected her personally. More than enough has transpired to ensure that the AUSA will not make the same mistake again. I ask the Court to rule on the issue before it, and to find that no sanctions are warranted.

                                      Respectfully submitted,

                                      */s/ Carmen M. Ortiz*
                                      CARMEN M. ORTIZ
                                      United States Attorney