# EXHIBIT 2

**December 30, 2009 Affidavit of James B. Farmer**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | Criminal No. 07-10289-MLW |
| DARWIN JONES, ) | |
| Defendant ) | |

### DECEMBER 30, 2009 AFFIDAVIT OF JAMES B. FARMER

I, James B. Farmer, being duly sworn, do hereby depose and state:

1. I am the Chief of the Criminal Division of the United States Attorney's Office for the District of Massachusetts. I have been the Criminal Chief since December of 1995. Since June of 2005, I have also been Chief of the Antiterrorism and National Security Unit of the Office.

2. I make this affidavit primarily in conformance with paragraph 2 of this Court's Order of May 18, 2009 (United States v. Jones, 620 F.Supp. 2d 163, 185 [D. Mass. 2009]), and paragraph 2(a) of this Court's Order of December 8, 2009, which required that "[t]he United States Attorney's submission shall provide any updated information concerning the progress, if any, that has been made by the Attorney General in his efforts ...to improve the Department of Justice's process for investigating and disciplining prosecutorial misconduct."[1]

3. As indicated below, I am informed that the Department of Justice ("DOJ" or "the

---

[1] I also note one correction to my affidavit of December 1, 2009 in this matter. In paragraph 8 of that affidavit, I described a meeting among Acting United States Attorney Michael K. Loucks and the heads of all the federal investigative agencies in the District of Massachusetts. Though described as an August 2009 meeting, the meeting actually took place in September 2009. It had been originally planned for August, but scheduling considerations resulted in its being held in September.

1

Department") has taken a variety of steps to improve its ability to timely investigate judicial criticism and findings of DOJ attorney misconduct, as well as allegations of attorney misconduct brought to the Department's attention from other sources. First, in April 2009, the Office of Professional Responsibility ("OPR") conducted an internal review of all investigations that had been pending for more than one year. Those investigations were prioritized, and the office made a commitment to complete those matters on an expedited basis. These efforts have borne fruit. In Fiscal Year 2008, OPR opened 91 new investigations and closed 59, whereas in Fiscal Year 2009, OPR opened 99 new investigations and closed 77. Similarly, in Fiscal Year 2008, OPR opened 126 inquiries and closed 122; in Fiscal Year 2009, OPR opened 157 inquiries and closed 148.

4.     Second, in 2009, the Attorney General authorized OPR to hire six additional attorneys to assist with its caseload, two of whom already have been hired.

5.     Third, in Fiscal Year 2008, the Deputy Attorney General had already issued new procedures for responding to OPR reports that contain professional misconduct findings. The procedures provide United States Attorneys with deadlines in which to initiate formal disciplinary action, appeal OPR's findings of misconduct, or appeal OPR's disciplinary recommendations. The procedures ensure the prompt implementation of discipline, where appropriate.

6.     Fourth, although OPR has routinely participated in training of new DOJ attorneys, OPR has stepped up its involvement in those training programs. For example, OPR attorneys participated in a formal review of discovery practices within the Department, and is participating in the nationwide training associated with that review. In 2008-2009, OPR attorneys conducted

presentations on legal ethics to audiences at Main Justice, at the Department's National Advocacy Center in South Carolina, and at other DOJ components and U.S. Attorney's Offices upon request. OPR attorneys participated in the Department's Professional Responsibility Advisory Officers' Conference, and conducted presentations in media relations for U.S. Attorneys and other DOJ components, focusing on the policies and ethical issues concerning contacts with the media. OPR also participated in the Civil Chiefs' Conference, First Assistants' Conference, Criminal Chiefs' Conference, and United States Attorneys' Conference. OPR continues to serve as the Department's liaison to state bar counsel on matters affecting the professional responsibility of Department attorneys.

7. Fifth, as of April 2009, the most recent annual report that OPR had completed and posted on its public website was for Fiscal Year 2005. OPR now has completed and posted publically its annual reports for Fiscal Years 2006 and 2007, and its annual report for 2008 has been completed and is under review. The 2009 annual report is being drafted, and OPR expects that it will be finalized and publically available in early 2010. As described on OPR's website, "[t]he annual report discusses the work of OPR and provides summaries of cases closed during the year. In addition, OPR identifies significant trends in allegations of attorney misconduct, and makes recommendations to the Attorney General on the need for changes in policies or procedures that become evident during the course of internal inquiries reviewed or initiated by [OPR]."

8. Finally, with respect to the *Jones* case, OPR has completed the proactive stage of its investigation into the court's findings of attorney misconduct (reported at 620 F. Supp. 2d 113). Witness interviews have been completed, relevant documents have been collected and

reviewed, and OPR's report of its investigation is being drafted. OPR notified the court by letter dated November 19, 2009, that, pursuant to the Privacy Act and other federal regulations, it will provide the court with the results of its investigation when it is final. OPR also indicated that it would inform the court of any disciplinary action taken in the matter when any disciplinary proceedings are final.

9. AUSA Sullivan attended the Court's December 16, 2009 training program.

10. Regarding the Department's "efforts to minimize the risk that federal prosecutors will fail to produce required discovery in criminal cases," as I indicated in paragraph 20 of my December 1, 2009 affidavit, the senior leadership of DOJ continues to consider a number of significant measures designed to provide additional guidance to DOJ's prosecutors in order to enhance their compliance with their discovery obligations in criminal cases. The Department has conducted the first round of interviews for the national coordinator for discovery and Brady/Giglio-related issues, as well as for the coordination of issues and policy dealing with electronic evidence. However, no additional measures beyond those described in my December 1, 2009 affidavit have yet come to fruition.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Signed on December 30, 2009.

*James B. Farmer*
JAMES B. FARMER
Chief, Criminal Division